IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SAUL ALEJANDRO RAMIREZ GIRON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:26-cv-00388 (RDA/WBP) |
| JOSEPH SIMON, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

ORDER

This matter comes before the Court on Petitioner Saul Alejandro Ramirez Giron's ("Petitioner") Petition for Writ of Habeas Corpus (Dkt. 1) seeking release from Immigration and Customs Enforcement ("ICE") custody. This matter has been fully briefed, and this Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Petition.

I. BACKGROUND

Petitioner is currently being detained at the Farmville Detention Center in Farmville, Virginia. Dkt. 1 at 1. Petitioner is a native and citizen of Guatemala. *Id.* at 3.

Petitioner first entered the United States in 2007. *Id.* at 5. He was ordered removed on May 17, 2007, and was physically removed on May 25, 2007. *Id.* He then reentered the United States in 2008, but avoided detection by immigration officials. *Id.*

On October 24, 2014, agents encountered Petitioner near Fairfax, Virginia. Dkt. 10-2. The United States Department of Homeland Security ("DHS") then reinstated Petitioner's removal order. Dkt. 1 at 5. Thereafter, Petitioner underwent a reasonable fear interview and was released on an Order of Supervision. *Id.* Petitioner filed an I-589 Application for Asylum and for Withholding of Removal. *Id.* On February 14, 2019, an Immigration Judge granted the withholding of removal to Guatemala

pursuant to 8 U.S.C. § 1231(b)(3)(B). *Id.* Pursuant to that withholding of removal, Petitioner has repeatedly been granted employment authorization. *Id.*

In the declaration of Assistant Field Office Director Charles M. Byrne, he attests that, on January 16, 2026, when Petitioner reported to a regularly scheduled meeting with Immigration and Customs Enforcement ("ICE") agents, "[i]t was determined that he was amenable to third country removal to Mexico," and Petitioner was "directed to report on February 3, 2026, for removal to Mexico." Dkt. 10-2 at 3.

Petitioner alleges that, on February 3, 2026, while attending a regularly scheduled meeting ICE, Petitioner was taken into custody and transported to the Farmville Detention Center, where he remains detained. Dkt. 1 at 6. Upon his arrival at the detention center, ICE agents informed Petitioner of DHS's intent to remove Petitioner to Mexico. *Id.* Petitioner immediately filed I-246, Application for a Stay of Deportation or removal, which ICE denied on February 4, 2026. *Id.* Byrne asserts that, at this meeting, DHS issued a notice revoking Petitioner's Order of Supervised Release, provided him with an informal interview, and served him with a notice of third country removal to Mexico. Dkt. 10-2 at 3-4; Dkt. 10-3 (Notice of Revocation of Release); Dkt. 10-4 (Notice of Third Country Removal).

On February 6, 2026, agents with U.S. Citizenship and Immigration Services ("USCIS") conducted a third country removal screening based on Petitioner's fear of being removed to Mexico. Dkt. 1 at 5.

On February 9, 2026, Petitioner filed the Petition asserting five counts: (i) violation of the Fifth Amendment based on the lack of any significant likelihood of removal under 8 U.S.C. § 1231 (Count One); (ii) reframes that same alleged violation of the Fifth Amendment based on the factors in *Mathews v. Elridge*, 424 U.S. 319 (1976)(Count Two); (iii) violation of the Fifth Amendment based on the revocation of his Order of Supervision (Count Three); (iv) violation of the Administrative Procedure Act (the "APA") (Count Four); and (v) violation of the Fifth Amendment based on a failure to provide

Immigration Judge review of the decision to remove him to Mexico. Dkt. 1 at 12-16.

On February 17, 2026, Respondents filed their Opposition to the Petition. Dkt. 10. On February 27, 2026, Petitioner filed his Reply. Dkt. 13. On March 3, 2026, Petitioner filed a Notice of Supplemental Authority. Dkt. 14.

## II.  LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.  DISCUSSION

As a threshold matter, this Court has jurisdiction to consider Petitioner's habeas challenge to his detention as neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this court of jurisdiction under 28 U.S.C. § 2241 to review the legality of Petitioner's detention. *See Luna Quispe v. Crawford*, 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025). The Court will address each of Petitioner's Counts in turn to see if they provide a basis for habeas relief.

A.  *Zadvydas* Claim (Counts One and Two)

8 U.S.C. §1231(a) requires the Government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) the date the order of removal becomes administratively final; (ii) if the

3

removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court determined that indefinite detention under 8 U.S.C. § 1231 would raise "serious constitutional concerns" and construed the statute to contain "an implicit 'reasonable time' limitation, which is subject to federal-court review." *Id.* at 682. The Supreme Court also found that there was a "presumption" that detention for six months was reasonable and that, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Here, Petitioner has not been detained for anywhere near the length of time held to be presumptively constitutionally compliant in *Zadvydas*. Petitioner has been detained since February 3, 2026 – well short of the six-month period recognized in *Zadvydas*. Although Petitioner argues that there is no significant likelihood that he will be removed in the reasonably foreseeable future because the process is still "in the nascent stage," Dkt. 13 at 23, this argument fails because his detention under Section 1231 is also in the "nascent stage." It is premature and speculative to argue that there is no likelihood of removal within the *Zadvydas* presumptive period. Plaintiff's argument in this regard is premature and does not satisfy his burden on habeas review.

Furthermore, to the extent that Petitioner argues that his removal is unlikely because he is due additional process, the Fourth Circuit has rejected such claims. *See Castaneda v. Perry*, 95

4

F.4th 750, 758 (4th Cir. 2024). Specifically, the Fourth Circuit recognized that ongoing proceedings and the "absence of a date certain" for "the conclusion of those proceedings is of no moment." *Id.* Indeed, the Fourth Circuit went on to cite with approval decisions from other Circuits applying *Zadvydas* to lengthy periods of detention due and finding no due process violation because the period of detention was "directly associated with a judicial review process that has a *definite and evidently impending termination point.*" *Castaneda*, 95 F.4th at 759 (quoting *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004)) (emphasis in original). Petitioner does not address Respondents' reliance on the *Castaneda* case.

As the Court previously noted, Petitioner's claim under *Mathews v. Eldridge* in Count Two is essentially a reframing of his *Zadvydas* claim. Dkt. 1 at 14 (arguing Petitioner's "procedural due process rights as a civil detainee have been violated by the Government's continued custodial detention under 8 U.S.C. § 1231"). Again, *Castaneda* addresses the issue raised here, as it holds that the standard in *Zadvydas* "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds." 95 F.4th at 760. "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Id.* (emphasis in original). Accordingly, here too, Petitioner fails to meet his burden on habeas review.

### B.    Revocation of the Order of Supervision (Count Three)

Count Three alleges violations relating to the revocation of the Order of Supervision. Although Petitioner alleged that DHS did not formally revoke Petitioner's Order of Supervision, Respondents submitted the Notice of Revocation of Release indicating that supervision was revoked because: (i) "ICE is seeking travel documents to affect your expeditious removal to a third party country (Mexico)"; (ii) "On **February 14, 2019**, you were ordered removed to **Guatemala,**

but you were granted withholding of removal to **Guatemala**. Your case is under review for removal to an alternate country, specifically Mexico"; and (iii) "Your conduct, or other circumstances, indicates that release is no longer appropriate since ICE has the ability to remove you to a third-party country, Mexico." Dkt. 10-3 (emphasis in original). Petitioner argues that the Notice fails to explain "the reasons for the revocation." Dkt. 13 at 18. Not so. The Notice clearly sets forth that the reason for the revocation is Petitioner's changed circumstances, namely the availability of third country removal to Mexico. Additionally, because the Notice sets forth the reasons for the revocation, Petitioner's argument that his informal interview was not a "meaningful opportunity" to respond to the reasons for the revocation also fails. *Id.* at 18-19.

Petitioner also argues for the first time in reply that Field Office Director Robert Guadian lacked authority to issue the Notice. Dkt. 13 at 16. But this is not a basis for habeas relief identified in the Petition, and a pleading cannot be amended through a Reply brief. Moreover, because it was not raised until Reply, Respondents did not have an opportunity to respond to it. Petitioner speculates that the Notice was issued "without the required authority and findings," but, of course, it is unsurprising that such information is not in the record where Petitioner did not raise this argument until Reply. *Id.* at 20. Accordingly, this is not a basis identified in the Petition, and Petitioner has not met his burden in this regard.

C.    APA Claim (Count Four)

Neither party devotes substantial attention to the APA claim. The sole reference to the APA claim is: "The detention of Petitioner is arbitrary and capricious, and not in accordance with the law." Dkt. 1 ¶ 68. It is unclear what particularly Petitioner views as being arbitrary and capricious, but presumably this claim is based on the same allegations as Count Three and thus fails for the same reasons.

6

### D.    Third County Removal Claim (Count Five)

In Petitioner's final Count, Petitioner argues that he is entitled to review by an Immigration Judge of the asylum officer's denial of his reasonable fear regarding removal to Mexico. Dkt. 1 at 16-19. Although this does not fall within the typical habeas relief, Respondents acknowledge that courts "have allowed habeas challenges wherein habeas was the only cause of action available." Dkt. 10 at 20. Indeed, the Supreme Court has explained that challenges that "imply the invalidity" of "removal" can "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). Indeed, the Supreme Court expressly held that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Id.* (alterations in original). Thus, this matter is properly raised in habeas.[1]

Respondents argue that this Court lacks jurisdiction to hear Petitioner's challenge pursuant to 8 U.S.C. § 1252(g). But Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her decision or action to commence actions, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal citations

---

[1] Respondents' reliance on *DHS v. Thuraissigiam*, 591 U.S. 103 (2020) is unavailing. Respondents first rely on *Thuraissigiam* for the proposition that habeas does not extend to aliens seeking "the opportunity to remain lawfully in the United States." *Id.* at 119-20. But that principle does not apply here, where Petitioner's habeas claims do not relate to any ability to remain in the United States and are concentrated on the process available to him regarding DHS's decision to send him to a third country. Respondents next rely on *Thuraissigiam* for the principle that the petitioner there "was seeking almost identical relief to that sought by Bojorquez here . . . an order directing an IJ to review the DHS's order of removal." Dkt. 10 at 21. Not so. In *Thuraissigiam*, the petitioner was in expedited removal proceedings and *obtained Immigration Judge review* of his credible fear allegations. 591 U.S. at 114 (noting that "an Immigration Judge affirmed on *de novo* review and returned the case to the Department for removal"). Instead of obtaining an initial review of his credible fear allegations, the petitioner in *Thuraissigiam* was attempting to reopen his credible fear proceedings to assert a *new* fear of persecution not previously raised. *Id.* The Supreme Court sensibly rejected such a second bite at the apple. Here, Petitioner seeks a first bite of the apple because he has never had an opportunity to raise any credible fears with respect to Mexico because Mexico was not previously on the table as a place to which he could be removed. Accordingly, *Thuraissigiam* does not preclude a review of the circumstances here.

omitted).  Respondents assert that Petitioner's habeas challenge relates to the *execution* of his removal order and that Petitioner is essentially seeking to delay execution of his removal order.  Dkt. 10 at 23-24.  Not so – this is not a reasonable construction of Petitioner's claim.  Petitioner does not challenge in habeas the *decision* to execute an order of removal; rather, Petitioner challenges the *process* he receives.   As an initial matter, the removal order itself does not authorize removal to Mexico.  *Santamaria Orellana v. Baker*, 2025 WL 2841886, at *7 (D. Md. Oct. 7, 2025) (holding that petitioner's claims requesting immigration judge review of a negative third country screening interview "does not challenge the execution of the 2006 removal order at issue, which does not authorize removal to Mexico").  Moreover, Petitioner could not have challenged the decision to remove him to Mexico – which had not yet been made – during those removal proceedings.  *See Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025) ("Instead, Ibarra-Perez challenges ICE's separate and post-hearing decision to remove him to Mexico. He could not have contested this decision through the normal petition-for-review process because it was made after his removal proceedings had ended.").  And, in any event, Petitioner does not challenge removal the decision to remove him to Mexico in this forum, but merely argues that, before reaching that determination, he is entitled to additional process.  Indeed, the Fourth Circuit has explicitly rejected the contention that Section 1252(g) strips district court jurisdiction over habeas petitions asserting that the Petitioner is entitled to a hearing before an immigration judge.  *See Selgeka v. Carroll*, 184 F.3d 337, 346 (4th Cir. 1999) ("In sum, we hold that we have jurisdiction to review Selgeka's application for habeas corpus and that Selgeka is entitled to a hearing before an immigration judge.").[2]

---

[2] Respondents further argue that the Court should not address the issues raised in this case because they are the subject of a class claim in the District of Massachusetts. In *D.V.D. v. U.S. Dep't of Homeland Sec.*, five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first providing notice and an opportunity to apply for protection from removal to that country. 778 F. Supp. 3d 355 (D. Mass. 2025).  On April 18, 2025, the District

Having determined that this Court has jurisdiction to consider Petitioner's habeas claim, the Court next turns to the merits of Petitioner's argument. As an initial matter, the Court notes that a number of judges in this Circuit have determined that, as a matter of procedural due process, Petitioner is entitled to immigration judge review of his negative fear determination. *See Bautista Serpas v. Simon*, 1:25-cv-02369 (E.D. Va. Feb. 3, 2026) (Trenga, J.); *Juarez Villatro v. Noem*, 1:25-cv-2359 (E.D. Va. Jan. 6, 2026) (Trenga, J.); *Rivas-Rojas v. Noem*, 1:25-cv-1624 (E.D. Va. Nov. 17, 2025) (Giles, J.); *Samadov v. Hott*, 1:25-cv-1441 (E.D. Va. Jan. 22, 2026) (Giles, J.); *Cruz Medina v. Noem*,

---

Court of Massachusetts granted the plaintiffs' class certification and a preliminary injunction, requiring DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

There has been no final judgment on the merits in *D.V.D.*, and there is thus no *res judicata* effect. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*res judicata* requires a "final judgment on the merits"). Moreover, there are compelling reasons to address Petitioner's claims, as failing to do so would "effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Santamaria Orellana v. Baker*, 2025 WL 2841886, at *11 (D. Md. Oct. 7, 2025). Moreover, the Supreme Court's stay does not indicate on what basis the stay was issued. *Santamaria Orellana*, 2025 WL 2841886, at *11 ("[B]ased on the presently available guidance from the Supreme Court, there is an insufficient basis upon which to reach a conclusion on which aspects of *D.V.D.* the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 731 (W.D. Wash. 2025) ("The Supreme Court did not decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success on its due process and APA claims."). Moreover, as a general matter, only this Court has jurisdiction to provide Petitioner with habeas relief. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442-43 (2004) (explaining that district courts are limited to granting habeas relief "within their respective jurisdictions"). A number of district judges in this District and the District of Maryland have easily rejected Respondents' argument that this case should be dismissed in favor of the *D.V.D.* class. And, indeed, in other cases, government officials – like Respondents – have argued that such class relief is inappropriate. *See Sanchez v. Noem*, 2026 WL 483475, at *3 (S.D. W. Va. Feb. 20, 2026) (rejecting petitioner's argument – and accepting the government's position – that a class action did not compel a decision in the petitioner's favor). Therefore, the Court declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation.

9

2025 WL 2841488, at *7 (D. Md. Oct. 7, 2025); *Palacios v. Mullin*, 2026 WL 933319, at *8 (D. Md. Apr. 7, 2026).

The Court begins with a discussion of the background principles against which the Court analyzes the arguments made here. "The procedural component of due process 'imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause.'" *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016). Further, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *J.G.G.*, 604 U.S. at 673 (internal quotations omitted). Under the Immigration and Nationality Act (the "INA"), a noncitizen may be removed to: (i) a country where they are a citizen, subject, or national; (ii) a country where they were born; (iii) a country where they have a residence; or (iv) a country with a government that will accept the alien if removal under (i)-(iii) is unavailable. 8 U.S.C. § 1231(b). A "withholding of removal order [is] country specific." *Abrego Garcia v. Noem*, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring). Indeed, the Fourth Circuit has recognized that, "because withholding of removal is country-specific, as the government says, if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country." *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

Turning to the applicable statutory provisions, in Section 1231(b)(3) of the INA, Congress has specifically restricted "Removal to a Country Where [an] Alien's Life or Freedom Would be Threatened."[3] More specifically, it provides that "the Attorney General may not remove an alien to a

---

[3] Respondents argue that Petitioner is only entitled to those rights that Congress has provided by statute. Dkt. 10 at 29 (citing *Thuraissigiam*, 591 U.S. at 140). In *Thurassigiam*, the petitioner was stopped 25 yards from the border, and the Supreme Court was clear in stating "an alien *in respondent's position* has only those rights regarding admission that Congress has

country *if the Attorney General* decides that the alien's life or freedom would be threatened in that country." 8 U.S.C. § 1231(b)(3) (emphasis added). Under the INA's implementing regulations, noncitizens are entitled to credible fear or reasonable fear screenings under certain circumstances. 8 C.F.R. §§ 208.16(a), 208.30(a), 208.31(a). Section 208.16 applies to the original withholding of removal proceedings, in which Petitioner successfully obtained withholding of removal to Guatemala. Section 208.30 applies to expedited removal proceedings and noncitizen stowaways, while Section 208.31 applies to expedited removal proceedings relating to persons convicted of aggravated felonies or those with a reinstated removal order. Thus, no particular regulation appears to address Section 1231(b)(3)'s mandate that an alien not be removed to a country of which they have a credible fear.

In the first instance, the Court notes that immigration judges are employees of the Department of Justice, while asylum officers are employees of DHS. *See United States v. Moriello*, 980 F.3d 924, 936 n.3 (4th Cir. 2020); *Selgeka*, 184 F.3d at 344 ("Unlike asylum officers who are employees of the INS, immigration judges are independent of the INS."); *Shoukat v. Attorney General*, 151 F. App'x 110, 112 (3d Cir. 2005) ("First, unlike an asylum officer who is an employee of the INS (now the DHS), an IJ is independent of the INS."). Although no party addresses it, Section 1231(b)(3)(A) specifically notes that the Attorney General must find that an alien has no credible fear. It is unclear what part of the proceedings here reflect a decision by the Attorney General.[4] Furthermore, Section

---

provided by statute." 591 U.S. at 140 (emphasis added). In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Cout recognized that there are distinctions between those aliens encountered at the border and those encountered in the interior of the country. As the Fourth Circuit has recognized, "[d]ue process is not a one size fits all proposition." *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir 2022). Nonetheless, the Court need not address any potential distinction that arises based on where Petitioner was encountered, because Congress has expressly held that Respondents "*may not*" remove Petitioner to a country where he has a credible fear. 8 U.S.C. § 1231(b)(3).

[4] Indeed, Respondents argue that the only decisionmakers are DHS employes: "a highly trained USCIS asylum officer" and "a supervisory asylum officer." Dkt. 10 at 40.

1231(b)(3)(C) provides that to determine whether an "an alien has demonstrated that the alien's life or freedom would be threatened . . . the *trier of fact* shall determine whether the alien has sustained the alien's burden of proof . . . *in the manner* described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title." 8 U.S.C. 1231(b)(3)(C) (emphasis added). Section 1158 provides for the taking of testimony as well as "other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii), (iii). Whether an asylum officer constitutes a "trier of fact" for purposes of Section 1231(b)(3) appears to be an open question (and, again, it is unclear how an interview by a DHS employee could make a finding for the Attorney General). The only case that appears to have directly addressed the issue determined that it did not matter whether the asylum officer was a trier of fact, because there was review by an Immigration Judge. *See Alsonso-Juarez v. Garland*, 80 F.4th 1039, 1055 (9th Cir. 2023) ("But even if we were to suppose that Congress did intend the term 'trier of fact' to refer to an IJ and not an asylum officer, the reasonable fear regulations provide for de novo determination by an IJ of the merits of all noncitizens' withholding-only claims."). The Fourth Circuit's decision in *Selgeka*, which appears to be the most on-point decision, in the context of refugee applications, specifically rejected the government's claim that an interview before an asylum officer was sufficient for purposes of Section 1158. 184 F.3d at 344. In particular, the Fourth Circuit took note of the fact that the government's interpretation of the regulations "denied stowaways the rights of other asylum applicants." *Id.* at 344 (citing *Marincas v. Lewis*, 92 F.3d 195, 200-01 (3d Cir. 1996)).

Applying the principles that the Fourth Circuit relied upon in *Selgeka* here, the Court finds that Petitioner has a due process right to review of the negative credible fear determination by an immigration judge. As a review of the DHS regulations reveals, in almost all other circumstances where an alien raises a potential credible fear of removal to a particular country, there is review by an immigration judge. 8 C.F.R. § 208.30(g) (providing that the asylum officer "shall inquire whether the alien wishes to have an immigration judge review the negative decision, which shall include an

12

opportunity for the alien to be heard and questioned by the immigration judge"); 8 C.F.R. § 208.31(g) ("The asylum officer's negative decision regarding reasonable fear *shall be* subject to review by an immigration judge . . . ." (emphasis added)); *see also* 8 C.F.R. § 208.16(a) (providing for immigration judge review in initial withholding proceedings). Indeed, there are *no regulations* "that provide for a circumstance under which USCIS is given the authority to conduct fear-screening interviews without provided for independent review of that screening by an IJ." *Sagasizado v. Noem*, 802 F. Supp. 3d 992, 1010 (S.D. Texas 2025); *see also Cruz Medina*, 2025 WL 2841488, at *7 ("The Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."). As the Fourth Circuit has emphasized, "the prohibition on removal to a country where a noncitizen would face persecution or torture remains absolute" and is "country specific." *Guzman Chavez*, 940 F.3d at 879. Section 1231(b)(3) and Section 1158 of the INA require that a trier of fact make specific findings based on testimony and other evidence, which would appear to plainly require a more formalized setting than the information interview with an asylum officer that took place here.

An example by way of hypothetical reveals why this is the only sound decision to be reached. Consider that Country A and Country B are neighboring countries who have jointly agreed to persecute and jail all members of a particular religious group. An Alien is a member of this religious group and flees Country A for the United States. The Alien is placed in removal proceedings. An Asylum Officer determines that the Alien has no credible fear of returning to Country A, but the Alien obtains review of that decision by the Immigration Judge who ultimately determines that his fear is credible and issues withholding of removal to Country A. DHS then determines that Country B is willing to accept the Alien and issues a Notice of Third Country Removal. The Alien claims a credible fear and is again before the Asylum Officer who determines that such fear is not credible – relying on

the same evidence that the Immigration Judge had previously determined was credible. But no review is available for the Asylum Officer's second credible fear determination and so, in this way, DHS is able to circumvent the Immigration Judge's holding and remove the Alien to Country B despite the Immigration Judge previously finding that there was a credible fear based on the same policy and the same evidence, just with respect to a neighboring country. This cannot comport with the requirements of Sections 1231 and 1158, nor can it comport with due process.

With respect to an analysis of the *Mathews v. Eldridge* factors,[5] the Court incorporates the well-reasoned analysis performed by the various judges in this District and the District of Maryland who have analyzed these same circumstances and determined that procedural due process requires review by an Immigration Judge. *See, e.g., Bautista Serpas v. Simon*, No. 1:25-cv-02369 (E.D. Va. Feb. 3, 2026) (Trenga, J.); *Juarez Villatro v. Noem*, No. 1:25-cv-2359 (E.D. Va. Jan. 6, 2026) (Trenga, J.); *Cruz Medina v. Noem*, 2025 WL 2841488, at *7 (D. Md. Oct. 7, 2025); *Palacios v. Mullin*, 2026 WL 933319, at *8 (D. Md. Apr. 7, 2026). In sum, as a matter of procedural due process, Petitioner is entitled to Immigration Judge review of his negative fear determination as provided for in the regulations governing the analogous context. 8 U.S.C. §§ 208.30, 208.31.

## IV. CONCLUSION

For all of the reasons above, the Petition (Dkt. 1) is GRANTED-IN-PART and DENIED-IN-PART. The Petition is granted insofar as Petitioner is entitled to Immigration Judge review of his negative fear determination as provided for in the regulations governing the analogous context (8 U.S.C. §§ 208.30, 208.31). The Petition is otherwise denied; and it is

FURTHER ORDERED that the Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 2) is DENIED as MOOT given that the Court has acted on the Petition;

---

[5] 424 U.S. 319, 332 (1976).

14

and it is

FURTHER ORDERED that Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from removing Petitioner to Mexico unless he has first received review by an Immigration Judge pursuant to 8 C.F.R. § 208.31(g) of the asylum officer's negative credible decision and that the requirements of Section 208.31(g) are satisfied.

The Clerk of the Court is directed to provide this Order to all counsel of record and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
April 15, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

15